**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

JENNIFER L. O'NEAL,                          :

      Plaintiff,                              :

vs.                                          :        CA 20-0466-MU

KILOLO KIJAKAZI,                             :
Acting Commissioner of Social Security,

                                            :

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer L. O'Neal brings this action, pursuant to 42 U.S.C. § 1383(c)(3),

seeking judicial review of a final decision of the Commissioner of Social Security

denying her claim for supplemental security income benefits. The parties have

consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C.

§ 636(c), for all proceedings in this Court. (Doc. 20 ("In accordance with provisions of 28

U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United

States magistrate judge conduct any and all proceedings in this case, . . . order the

entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc.

21 (order of reference)). Upon consideration of the administrative record, Plaintiff's brief,

the Commissioner's brief, and the parties' oral arguments on September 16, 2021, the

Court concludes that the Commissioner's decision denying benefits should be reversed

and remanded for further proceedings not inconsistent with this decision.[1]

---

[1]        Any appeal taken from this memorandum opinion and order and judgment shall
be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 20 ("An appeal from a judgment
(Continued)

## I. Procedural Background

Plaintiff filed an application for supplemental security income benefits on or about

September 6, 2018, alleging a disability onset date of May 24, 2018. (*See* Doc. 15,

PageID. 207-13).[2] O'Neal's claim was initially denied on November 28, 2018 (*id.,*

PageID. 129-135) and, following Plaintiff's December 19, 2018 request for a hearing

before an Administrative Law Judge ("ALJ") (*id.,* PageID. 136-39), a hearing was

conducted before an ALJ on December 16, 2019 (*id.,* PageID. 100-119). On February

20, 2020, the ALJ issued a decision finding that the claimant was not disabled and

therefore, not entitled to social security benefits. (*Id.,* PageID. 84-94). More specifically,

the ALJ determined at the fifth step of the five-step sequential evaluation process that

O'Neal retained the residual functional capacity to perform a reduced range of light

work, with identified postural and mental limitations, and those sedentary jobs identified

by the vocational expert ("VE") during the administrative hearing (*see id.,* PageID. 88-89

& 93; *compare id. with* PageID. 114-17). On or about March 9, 2020, Plaintiff appealed

the ALJ's unfavorable decision to the Appeals Council (*see id.,* PageID. 76-78); the

Appeals Council denied O'Neal's request for review on August 12, 2020 (*id.,* PageID.

---

entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

[2]    As set out in the ALJ's decision, "supplemental security income is not payable prior to the month following the month in which the application [is] filed" (Doc. 15, PageID. 84); therefore, the ALJ treated the application date of September 6, 2018 as Plaintiff's disability onset date (*compare id. with id.,* PageID. 84, 86 & 94).

70-72). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to bipolar disorder, anxiety disorder, borderline personality disorder, opioid use disorder on maintenance therapy, degenerative disc disease of the lumbar and cervical spines with chronic pain, hypertension, gastroesophageal reflux disease (GERD), and obesity. The Administrative Law Judge (ALJ) made the following relevant findings:

> **2.     The claimant has the following severe impairments: bipolar disorder; anxiety disorder; borderline personality disorder; opioid use disorder on maintenance therapy; degenerative disc disease of the lumbar and cervical spines with chronic pain; hypertension; gastroesophageal reflux disease, and obesity (20 CFR 416.920(c)).**

> .     .     .

> **3.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

> .     .     .

> **4.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a reduced range of light work as defined in 20 CFR 416.967(b): She can lift and carry up to twenty pounds occasionally and ten pounds frequently. She can stand and walk for a total of four hours in an eight-hour workday and can sit for six hours in an eight-hour workday, but would require the ability to change positions as follows: stand for one hour at a time, walk for thirty minutes at a time, and sit for two hours at a time (change positions throughout the day in accordance with these time frames). When changing positions, she would be able to remain on task and perform the work duties. She can never crawl or climb a ladder, rope, or scaffold. She can occasionally balance, stoop, kneel, crouch, and climb ramps and stairs. She must avoid overhead reaching. She can occasionally push and pull with bilateral upper extremities. She must avoid work at unprotected heights and around hazardous machinery. She can understand, remember, apply, and carry out simple,**

3

**repetitive tasks, consistent with a GED reasoning level of 1, and could persist at that level of complexity for eight hours a day, five days a week, consistently. She must avoid more than casual and non-transactional interaction with the general public. She can have occasional interaction with co-workers and supervisors for non-collaborative work, defined as work not requiring working in concert with others to achieve a desired outcome or result. She would require a low stress work environment, defined as work that requires only occasional decision making and no paid by the piece or assembly/production pace work. She could adapt to routine changes in the work setting that are occasional in nature and gradually introduced.**

.        .        .

**5.      The claimant has no past relevant work (20 CFR 416.965).**

**6.      The claimant was born on July 18, 1975 and was 43 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

**7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).**

**8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).**

**9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).**

.        .        .

**10.     The claimant has not been under a disability, as defined in the Social Security Act, since September 6, 2018, the date the application was filed (20 CFR 416.920(g)).**

(Doc. 15, PageID. 86, 88-89, 92, 93 & 94).

## II. Standard of Review and Claims on Appeal

A claimant is entitled to an award of benefits when she is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or last for a continuous period of not less than 12 months. *See, e.g.,* 20 C.F.R. § 416.905(a). In determining whether a claimant has met her burden of proving disability, the Commissioner follows a five-step sequential evaluation process. *See, e.g.,* 20 C.F.R. § 416.920. At step one, if a claimant is performing substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(b). At the second step, if a claimant does not have an impairment or combination of impairments that significantly limits her physical or mental ability to do basic work activities (that is, a severe impairment), she is not disabled. 20 C.F.R. § 416.920(c). At step three, if a claimant proves that her impairments meet or medically equal one of the listed impairments set forth in Appendix 1 to Subpart P of Part 404, the claimant will be considered disabled without consideration of age, education, and work experience. 20 C.F.R. § 416.920(d). If the claimant is unable to prove the existence of a listed impairment, at the fourth step, the claimant's residual functional capacity is determined, 20 C.F.R. § 416.920(e), and then a determination must be made regarding whether claimant's physical and/or mental impairments prevent her from performing any past relevant work, 20 C.F.R. § 416.920(f). And at the fifth step, the Commissioner must consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides past relevant work. 20 C.F.R. § 416.920(g). Plaintiff bears the burden of proof through the first four steps of the sequential evaluation process, *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987), and while the burden of proof shifts to the Commissioner at the fifth step of the process to establish other jobs

existing in substantial numbers in the national economy that the claimant can perform,[3]

the ultimate burden of proving disability never shifts from the plaintiff, *see, e.g., Green v.*

*Social Security Administration,* 223 Fed.Appx. 915, 923 (11th Cir. May 2, 2007) ("If a

claimant proves that she is unable to perform her past relevant work, in the fifth step,

'the burden shifts to the Commissioner to determine if there is other work available in

significant numbers in the national economy that the claimant is able to perform.' . . .

Should the Commissioner 'demonstrate that there are jobs the claimant can perform,

the claimant must prove she is unable to perform those jobs in order to be found

disabled.'").[4]

The task for the Magistrate Judge is to determine whether the Commissioner's

decision to deny claimant benefits is supported by substantial evidence. Substantial

evidence is defined as more than a scintilla and means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  *Richardson v.*

*Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether

substantial evidence exists, we must view the record as a whole, taking into account

evidence favorable as well as unfavorable to the Commissioner's] decision."  *Chester v.*

*Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[5] Courts are precluded, however, from

"deciding the facts anew or re-weighing the evidence."  *Davison v. Astrue*, 370 Fed.

---

[3]      *See, e.g., McManus v. Barnhart,* 2004 WL 3316303, *2 (M.D. Fla. Dec. 14, 2004)
("The burden [] temporarily shifts to the Commissioner to demonstrate that 'other work' which the
claimant can perform currently exists in the national economy.").

[4]      "Unpublished opinions are not considered binding precedent, but they may be cited
as persuasive authority." 11th Cir.R. 36-2.

[5]      This Court's review of the Commissioner's application of legal principles, however,
is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam), citing *Dyer v. Barnhart*, 395 F.3d

1206, 1210 (11th Cir. 2005). And "[e]ven if the evidence preponderates against the

Commissioner's findings, [a court] must affirm if the decision reached is supported by

substantial evidence." *Id.*, citing *Crawford v. Commissioner of Social Security*, 363 F.3d

1155, 1158-1159 (11th Cir. 2004).

On appeal to this Court, O'Neal advances one reason the Commissioner's

decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1)

the ALJ committed reversible error in violation of § 416.945 of the Commissioner's

regulations, as well as Social Security Ruling 96-8p, because her RFC determination is

not supported by substantial evidence.

As indicated above, RFC comes into play at the at the fourth and fifth steps of the

sequential evaluation process. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("We use our

residual functional capacity assessment at the fourth step of the sequential evaluation

process to determine if you can do your past relevant work . . . and at the fifth step of

the sequential evaluation process . . . to determine if you can adjust to other work . . .

."). In determining a claimant's RFC, which is "'that which an individual is still able to do

despite the limitations caused by his or her impairments[,]'" the ALJ "considers all the

evidence in the record[.]" *Washington v. Social Sec. Admin., Commissioner,* 503

Fed.Appx. 881, 882-83 (11th Cir. Jan. 15, 2013), quoting and citing *Phillips, supra,* 357

F.3d at 1238.[6] Moreover, at the fifth step of the sequential evaluation process, the

_____

[6]    The responsibility for making the residual functional capacity determination at the
fourth step of the sequential evaluation process rests with the ALJ, *see, e.g.,* 20 C.F.R. §
404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative
law judge . . . is responsible for assessing your residual functional capacity."), who must
"'assess and make a finding about [the claimant's] residual functional capacity based on all the
(Continued)

Commissioner must establish that a significant number of jobs exist in the national economy that the claimant can perform given her RFC, age, education, and work experience. *See, e.g., Bellew v. Acting Commissioner of Social Sec.,* 605 Fed.Appx. 917, 930 (11th Cir. May 6, 2015) (citation omitted).

As part of the process of determining a claimant's RFC, that is, "the most [she] can still do despite" the limitations caused by her impairments, 20 C.F.R.  416.945(a)(1), an ALJ must take into consideration the medical opinions of treating, examining, and non-examining sources and, indeed, this issue is often at the forefront in social security cases.  *See Kahle v. Commissioner of Social Sec.,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In March of 2017, the Social Security Administration amended its regulations regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. *See, e.g.,* 20 C.F.R. § 416.920c. Under the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a); *see also Lee v. Saul,* 2020 WL 5413773, *5 (M.D. Ala. Sept. 9, 2020) ("The revisions [to Social Security regulations regarding the evaluation of medical evidence] state that the Commissioner 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from . . . medical sources.' 20 C.F.R. § 404.1520c(a)."). The regulations go on to provide that when evaluating the persuasiveness of medical opinions, "[t]he most important factors to be considered are

---

relevant medical and other evidence' in the case." *Phillips, supra,* 357 F.3d at 1238 (alteration in the original), quoting 20 C.F.R. § 404.1520(e).

those of supportability and consistency[.]" *Id.* at *5; *see also Swingle v. Commissioner of the Social Sec. Admin.,* 2020 WL 6708023, *2 (M.D. Fla. Nov. 16, 2020) ("When evaluating the persuasiveness of medical opinions, the most important factors are supportability and consistency."). "Thus, the ALJ 'will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions' in the determination or decision but is not required to explain how he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c)." *Id.* (footnotes omitted).

A major component of Plaintiff's argument that the ALJ's RFC determination is not supported by substantial evidence relates to the ALJ's rejection (on some level) of the opinions of the State-agency reviewing physician, Dr. Linda Duke, the Plaintiff's treating therapist, Jane Larrimore, and the Plaintiff's treating nurse practitioner, Sharon Brammer. For purposes of this opinion, the undersigned focuses solely on the mental opinion evidence of record. The ALJ analyzed the mental opinion evidence of Plaintiff's therapist, Jane Larrimore, M.S., and the prior administrative medical findings of non-examiner Dr. Linda Duke, a reviewing psychologist, in the following manner:

> As for the medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.[7] The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: Disability Determination Services psychologist, Linda Duke, Ph.D., opined that the claimant has mild limitations in understanding, remembering, or applying information and adapting or managing herself; and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. Dr. Duke enumerated associated functional limitations including carrying out short and simple instructions; attending and concentrating for two-hour periods on simple tasks with customary breaks; may miss one or two days a

---

[7]      This statement is nothing but a "restatement" of the initial provision of the new regulations as set forth in § 416.920c(a), *supra.*

month of work due to psychiatric signs and symptoms; casual interaction and contact with the general public; and casual, non-confrontational, supportive criticism and feedback from supervisors and co-workers. Dr. Duke's opinion is partially persuasive because parts of the opinion are consistent with the medical evidence of record, but the limitation that the claimant may miss one or two days a month of work due to psychiatric signs and symptoms is not consistent with the reported effectiveness of treatment or the overall findings from examination.

.     .     .

Jane Larrimore, M.S., opined that the claimant has multiple marked limitations in her ability to perform mental work activities with additional mild and moderate limitations. This opinion is not persuasive because it is not supported by the totality of the evidence, including the findings from examination and the improvement of symptoms with conservative treatment with medication and therapy.

(Doc. 15, PageID. 92 (internal citations omitted; footnote added)).

The undersigned initially finds that the ALJ's just-stated analysis is erroneous because it is contrary to the analysis required by the Commissioner's regulations, the ALJ having failed to hew to the requirement in the regulations that she explain how she considered both the supportability and consistency factors for Larrimore's medical opinions and Dr. Duke's prior administrative medical findings. (*See* Doc. 15, PageID. 92). To be sure, the ALJ briefly explained how she considered the consistency factor respecting the prior administrative medical findings of Dr. Duke and how she considered the supportability factor relative to Larrimore's medical opinions (*see id.*); however, she failed to explain how she considered both factors relative to the prior administrative medical findings of Dr. Duke (specifically, the supportability factor) and Larrimore's medical opinions (specifically, the consistency factor) as indisputably required by the Commissioner's new regulations. *See* 20 C.F.R. § 416.920c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's

medical opinions or prior administrative medical findings in your determination or decision."). As the Commissioner's own regulations describe them, supportability and consistency are important factors and, indeed, are "the most important factors" considered by the Administration when determining how persuasive it finds "a medical source's medical opinions or prior administrative medical findings[.]" *Id.* And since the ALJ in this case did not explain how she considered the supportability factor for the prior administrative medical findings of Dr. Duke and the consistency factor for the medical opinions of Jane Larrimore, M.S., as required by the new regulations, *see, e.g., Cook v. Commissioner of Social Sec.,* 2021 WL 1565832, *2 (M.D. Fla. Apr. 6, 2021) ("Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those two factors. . . . In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis[.]"), *report and recommendation adopted,* 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021), the undersigned specifically finds that the ALJ committed reversible error. Therefore, this case is due to be remanded so that the ALJ can perform the analysis required of her by the Commissioner's regulations, specifically 20 C.F.R. § 416.920c(b)(2).

To the extent the Defendant may contend that the ALJ's failure to address both supportability and consistency with respect to the opinions of Dr. Duke and Jane Larrimore amounts to mere harmless error, this Court cannot agree since the Court is confused by the analysis of Dr. Duke's opinion, specifically regarding whether the ALJ found Dr. Duke's opinion relative to the functional limitation that Plaintiff can "attend and concentrate for 2 hour periods on simple tasks with customary breaks and rest during

the regular workday," (Doc. 15, PageID. 126) persuasive or not. Part of the problem with

analyzing this question is that the ALJ intones only a portion of that functional limitation

(*see id.,* PageID. 92 ("attending and concentrating for two-hour periods on simple tasks

with customary breaks")), while failing to include the additional modifier of "rest during

the regular workday." (*Compare id. with id.,* PageID. 126). But even disregarding this

problem, the question, given the ALJ's specific mention of the foregoing functional

limitation—among other specifically-identified limitations, including that Plaintiff may

miss one or two days a month of work due to psychiatric signs and symptoms (*see id.,*

PageID. 92 (ALJ's list of five functional limitations))—becomes whether the ALJ found

this limitation persuasive in light of her ultimate analysis (*see id.* ("Dr. Duke's opinion is

partially persuasive because parts of the opinion are consistent with the medical

evidence of record, but the limitation that the claimant may miss one or two days a

month of work due to psychiatric signs and symptoms is not consistent with the reported

effectiveness of treatment or the overall findings from examination.")). This Court is

certainly aware and appreciates that there is no requirement that the ALJ articulate how

she considered each prior administrative medical finding of Dr. Duke individually,

*compare* 20 C.F.R. § 416.920c(b)(1) ("We are not required to articulate how we

considered each medical opinion or prior administrative medical finding from one source

individually.") *with Cook, supra,* at *2 ("[T]he regulations themselves do not require the

ALJ to explain the consideration of each opinion from the same source."); however,

given the manner in which the ALJ performed her analysis of Dr. Duke's prior

administrative medical findings, by specifically referencing five functional limitations

identified by Dr. Duke and then only directly finding inconsistent one of those limitations

while indicating she found "parts of [Dr. Duke's] opinion [] consistent with the medical

evidence of record[,]" (Doc. 15, PageID. 92), it certainly can be argued that the ALJ

meant to find that part of Dr. Duke's opinion directed to the functional limitation of

"attending and concentrating for two-hour periods on simple tasks with customary

breaks" to be consistent with the medical evidence of record. And while the Government

appears to read the ALJ's decision as has this Court (*see* Doc. 17, PageID. 1585), what

prevents this Court from finding complete clarity on this point is the ALJ's failure to

incorporate this functional limitation (found by Dr. Duke) into her mental RFC

determination. And given this failure and the confusing manner in which the ALJ

analyzed Dr. Duke's opinion with respect to this functional limitation, in particular (and,

generally, in terms of consistency and supportability), this action must be remanded for

further consideration because the ALJ's RFC determination is not linked to specific

evidence (articulated by the ALJ) in the record bearing upon Plaintiff's ability to perform

the mental requirements of work.

The record in this case is rife with evidence that Plaintiff's concentration is

impaired. (*See, e.g.,* Doc. 15, PageID. 353, 355, 357, 366, 650, 652, 654, 659, 663,

665, 989, 1010, 1023, 1028, 1030, 1035, 1037, 1090, 1111, 1117, 1124, 1166, 1337,

1421, 1427, 1433, 1530, 1534, 1537, 1540, 1544 & 1551). Accordingly, this Court is

unable to discern substantial evidence in the record supporting the ALJ's RFC finding

that Plaintiff can "persist" at understanding, remembering, applying, and carrying out

simple, repetitive tasks for eight hours a day, five days a week, "consistently" (*see id.,*

PageID. 88), when all the record establishes is that Plaintiff's concentration is impaired

and Dr. Duke found O'Neal's ability to maintain attention and concentration for extended

periods moderately limited (*id.,* PageID. 125)[8] and specifically iterated, when asked to

explain in narrative form the sustained concentration and persistent capacities and/or

limitations, that the claimant was capable of attending and concentrating (with respect to

the carrying out of short and simple instructions) for "2-hour periods on simple tasks

with customary breaks and rest during the regular workday." (*Id.,* PageID. 126). In other

words, given Dr. Duke's narrative explanation of the "meaning" of a moderate limitation

in the ability to maintain attention and concentration for extended periods (*compare id.*

*with id.,* PageID. 125), the explanation of a medical expert which the ALJ arguably

found persuasive (*see id.,* PageID. 92), the ALJ's contrary conclusion that such a

claimant so impaired can "persist" at understanding, remembering, applying, and

carrying out simple, repetitive tasks for eight hours a day, five days a week,

"consistently"[9] simply cannot withstand scrutiny because it is not "linked" to specific

---

8       The ALJ also found Plaintiff to have a moderate limitation in terms of concentration, persistence, and pace. (*See id.,* PageID. 87).

9       During oral arguments, and in the Government's brief, the Commissioner staked the position that the ALJ integrated Dr. Duke's 2-hour attention and concentration limitation into her RFC determination (*see, e.g.,* Doc. 17, PageID. 1585 ("The ALJ clearly found that the limitations Dr. Duke assessed in Plaintiff's concentration, persistence, and social interaction were consistent with the record and integrated those limitations into her RFC assessment[.]")) but no explanation was offered regarding how such integration was accomplished. To the extent the Commissioner means to indicate that Dr. Duke's limitation was integrated into the ALJ's finding that Plaintiff can "***persist*** at [understanding, remembering, applying, and carrying out simple, repetitive tasks, consistent with a GED reasoning level of 1] for ***eight hours a day, five days a week, consistently***[,]" (*see* Doc. 15, PageID. 88), it evades the undersigned how this can be so (or how the VE would have appreciated such integration) because Dr. Duke's specific functional limitation is that Plaintiff can only attend and concentrate for 2-hour periods on simple tasks with customary breaks and rest during the regular workday (again, a limitation that the ALJ arguably found persuasive), not eight hours, and such a limitation (as found by Dr. Duke) is often made a part of RFC determinations, *see, e.g., Bunn v. Social Sec. Admin., Commissioner,* 2021 WL 1171537, *3 (N.D. Ala. Mar. 29, 2021) (ALJ determined Plaintiff had RFC to attend and concentrate for two-hour periods); *Edmondson v. Saul,* 2020 WL 3489424 (N.D. Ala. Jan. 26, 2020) (ALJ found Plaintiff had the RFC to attend and concentrate for two-hour periods on simple tasks with customary breaks during the regular workday); *McCartha v. Astrue,* 2010 WL (Continued)

evidence in the record establishing that Plaintiff can attend and concentrate (with

respect to simple and repetitive tasks) for eight hours a day, five days a week. *See*

*Walker, supra,* at *4 (finding that because the ALJ's decision failed to point to any

specific evidence that supported the RFC conclusion that Plaintiff can concentrate for

eight hours per day or evidence contradicting Dr. Hinton's finding that Plaintiff can only

attend and concentrate for two-hour periods, the court could not conclude that

substantial evidence supported the ALJ's RFC determination, particularly as it pertained

to Plaintiff's mental functioning). The finding and holding in *Walker* is equally applicable

here.

In light of the foregoing, the undersigned finds that the ALJ's RFC assessment,

particularly as it relates to Plaintiff's mental impairments and limitations, is not "linked" to

substantial evidence in the record. As a result, the Commissioner's fifth-step denial of

benefits is due to be reversed and remanded for further proceedings not inconsistent

with this decision. Additionally, on remand, and as explained hereinabove, the ALJ must

perform the analysis required of her by 20 C.F.R. § 416.920c(b)(2) as it relates to the

supportability and consistency factors.

---

1995426, *3 (M.D. Ala. May 17, 2010) (ALJ found Plaintiff retained the RFC to concentrate for
two-hour periods on simple tasks with customary breaks and rest during the regular workday).
In other words, a person who needs a mental break of some sort after each 2-hour period of
attention and concentration on simple tasks obviously cannot persist at such tasks for "eight
hours a day, five days a week, consistently." *See Walker v. Saul,* 2020 WL 5079159, *4 (M.D.
Ala. Aug. 27, 2020) (recognizing the obvious difference between two hours and eight hours).
And that the ALJ clearly understood the distinction between two hours and eight hours is clear
based on her recognition (in her "physical" RFC determination) of quite significant limitations
with respect to Plaintiff's abilities to sit, stand and walk at one time (requiring the changing of
positions) (*see* Doc. 15, PageID. 88).

**CONCLUSION**

It is **ORDERED** that the decision of the Commissioner of Social Security denying

Plaintiff supplemental security income benefits be reversed and remanded pursuant to

sentence four of 42 U.S.C. § 405(g),[10] *see Melkonyan v. Sullivan*, 501 U.S. 89, 111

S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this

decision. The remand pursuant to sentence four of § 405(g) makes the Plaintiff a

prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412,

*Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and

terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 22nd day of September, 2021.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**

---

[10]     Although the plaintiff's application in this case is solely for supplemental security income benefits pursuant to 42 U.S.C. § 1383(c)(3), remand is appropriate under sentence four of § 405(g) because § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."